UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:07CV-273-H

SHARON NORRIS                                                    PLAINTIFF

V.

CORRECTIONS CORPORATION OF AMERICA
and ARVIL CHAPMAN                                  DEFENDANTS

**MEMORANDUM OPINION**

Defendant, Corrections Corporation of America ("CCA") is a private company that operates the Marion Adjustment Center ("MAC") under a contract with the State of Kentucky. Plaintiff, Sharon Norris alleges that CCA's negligence allowed a prisoner to escape, which led to her own assault and rape. Defendants have moved for summary judgment.

Gregory Edmonds was a prisoner at the MAC. Like many others incarcerated there, Edmonds had a history of committing violent crimes. On July 16, 2006, he escaped by crawling out a window and walking away from the facility. For purposes of this motion, the Court will assume that some failure to exercise ordinary or appropriate care on Defendants' part led to the escape. Within several hours of his escape from the MAC, Edmonds found his way to a service station less than seven miles away where Norris was an employee. There, he assaulted, robbed and raped her. Norris' suit in negligence followed in state court. Defendants removed the case to federal court on the grounds of diversity. Defendants' pending motion is premised on the argument that its negligence was not the proximate cause of Norris' injuries because those

injuries were not foreseeable.  To resolve this dispute requires the Court to consider under what circumstances, if any, Kentucky courts would hold CCA liable in negligence for harm to a third person (Norris) caused by Edmond's intentional criminal acts.

Not too long ago, Danny Boggs, Chief Judge of the Sixth Circuit Court of Appeals, authored a comprehensive and helpful review of Kentucky tort law concerning due care, foreseeability and proximate cause.  *See James v. Meow Media Inc.*, 300 F.3d 683 (6th Cir. 2002).[1]  To establish an actionable tort under Kentucky law, a plaintiff must show that (1) the defendant owed a duty of care to the plaintiff, (2) the defendant failed to exercise ordinary care and (3) the defendant's breach was a proximate cause of plaintiff's damages.  *Id.* at 689; *Mullins v. Comm. Life Ins. Co.*, 839 S.W.2d 245 (Ky. 1992).  Kentucky courts have adopted a universal duty of care, which means that actors can owe a duty to virtually everyone to whom a harm might be foreseeable.  *Grayson Fraternal Order of Eagles v. Claywell*, 736 S.W.2d 328, 332 (Ky. 1987).  However, actionable legal claims are circumscribed by an important principle: proximate cause.  Such claims must arise from the failure to exercise ordinary care that causes foreseeable harm.  *James*, 300 F.3d at 690.  Thus, the foreseeability of the injury defines the scope and character of a defendant's duty.  *Id.*; *Isaacs v. Smith*, 5 S.W.3d 500, 502 (Ky. 1999).  Both before and after *James*, Kentucky courts have struggled to define foreseeability in its varied contexts.

The essential question in any case is whether a harm was too unlikely to be foreseeable and to create a legal obligation to protect against it.  *James,* 300 F.3d at 691.  Our particular

---

[1] The circumstances in *James* were not particularly analogous to ours.  The Sixth Circuit concluded that the makers of violent video games do not owe a duty to protect third parties from the actions of game users because any injuries resulting from those actions are not foreseeable.  Also, the Circuit concluded that the violent or criminal act of a user constituted an intervening or superceding cause, which defeats the proximate cause element of the tort.

2

inquiry is whether the assault and rape of Norris was the reasonably foreseeable result of Edmond's escape. Determining this is a pure question of law for the Court. *Mullins*, 839 S.W.2d at 248. The Court should do so without the assistance of hindsight. *Id.; Mitchell v. Hadl*, 816 S.W.2d 183, 186 (Ky. 1991); *James v. Wilson*, 95 S.W.3d 875, 892 (Ky. App. 2002). The mere fact that the risk may have materialized does not resolve the foreseeability question. *Id.* After analyzing the Kentucky cases, Judge Boggs concluded that the state's courts had yet to create a principle to evaluate the probability of a particular harm. *James*, 300 F.3d at 692.

The general rule, which the Kentucky Supreme Court recently restated, is that one whose own conduct has not created a risk of harm has no duty to control the conduct of a third person to prevent harm to another unknown person. *Grand Aerie Fraternal Order of Eagles v. Carneyhan*, 169 S.W.3d 840, 849 (Ky. 2005); *also see James*, 300 F.3d at 693. Though the circumstances of *Carneyhan* are completely different than those here and its specific holdings not relevant here, some of Justice Cooper's discussion is of interest. Justice Cooper wrote that only a few well-settled special relationships can create a duty to control a third person's conduct to protect another from harm. *Id.* at 850.[2] And he dangled the possibility that one of the special relationships giving rise to a duty to control a third person's conduct may exist when one takes charge of a person with dangerous propensities. *Id.* at 849, citing Restatement (Second) of Torts,

---

[2] His views are consistent with another related rule which Judge Boggs had explained. *James*, 300 F.3d at 693-94. He said that, except under extraordinary circumstances, individuals are generally entitled to assume that third parties will not commit intentional criminal acts. *Id.; see* Restatement (Second) of Torts § 302B, cmt. d. In support of this rule, Judge Boggs cites both the laws of probability and the structural separation of civil and criminal law. First, individuals generally are unlikely to undertake intentional criminal conduct given the sanctions against it. Moreover, the system of criminal liability has concentrated responsibility for intentional criminal act in the primary actor, his accomplices, and his co-conspirators. As Judge Boggs wrote, "by imposing liability on those who did not endeavor to accomplish the intentional criminal undertaking, tort liability will diminish responsibility placed on the criminal defendant. The normative message of tort law in these situations would be that the defendant is not entirely responsible for his intentional criminal act." *Id.* at 694.

3

§ 319 (1965).[3]

If adopted, Section 319 would certainly represent a significant new direction for Kentucky law. In the years leading up to *Carneyhan,* Kentucky courts had found a duty of care for the intentional acts of third parties in only limited types of special relationships, as Cooper later suggested. *See Spivey v. Sheeler*, 514 S.W.2d 667 (Ky. 1974) (where a defendant gave a young child access to firearms); *Britton v. Wooten*, 817 S.W.2d 443 (Ky. 1991) (where a landlord owed a duty to a tenant to avoid the opportunity for arson); *Waldon v. Hous. Auth. of Paducah*, 854 S.W.2d 779 (Ky. 1991) (where a landlord owed a duty to protect tenants from intruders); *Evans v. Morehead Clinic*, 749 S.W.2d 696 (Ky. Ct. Ap. 1988) (where a professional

---

[3] The Restatement (Second) of Torts, § 319, states:
"§ 319. Duty Of Those In Charge Of Person Having Dangerous Propensities

> One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm."

The Comments and Illustrations accompanying the section state:

> "Comment:
> a. The rule stated in this Section applies to two situations. The first situation is one in which the actor has charge of one or more of a class of persons to whom the tendency to act injuriously is normal. The second situation is one in which the actor has charge of a third person who does not belong to such a class but who has a peculiar tendency so to act of which the actor from personal experience or otherwise knows or should know.
>
> Illustrations:
> 1. A operates a private hospital for contagious diseases. Through the negligence of the medical staff, B, who is suffering from scarlet fever, is permitted to leave the hospital with the assurance that he is entirely recovered, although his disease is still in an infectious stage. Through the negligence of a guard employed by A, C, a delirious smallpox patient, is permitted to escape. B and C communicate the scarlet fever and smallpox to D and E respectively. A is subject to liability to D and E.
> 2. A operates a private sanitarium for the insane. Through the negligence of the guards employed by A, B, a homicidal maniac, is permitted to escape. B attacks and causes harm to C. A is subject to liability to C."

4

becomes aware of a third party's intention to engage in violence against a specific person); *Grayson Fraternal Order of Eagles, Aerie No. 3738, Inc. v. Claywell*, 736 S.W.2d 328 (Ky. 1987) (where a state drum shop statute imposes a specific duty of care where serving alcohol to an intoxicated person); *also see DeShaney v. Winnebago County Dep't of Soc. Serv.*, 489 U.S. 189 (1987) (describing the general duty of care to one who is under the state's care and protection). None of these circumstances is similar to those here.[4] Nor did any of these courts suggest the adoption of Restatement (Second) of Torts, § 319, as a guiding principle.

Indeed, the Kentucky Supreme Court had twice considered circumstances closely analogous to ours and declined to even consider the adoption of § 319. In *Fryman v. Harrison*, 896 S.W.2d 908 (Ky. 1995), the Court considered the liability of a county jailer and clerk who improperly released a man from custody. Upon his release, the man assaulted a third person who sued in negligence. The Supreme Court held that the county officials did not have a duty to protect persons not readily identifiable from the intentional acts of third persons. *Id.* at 909-910. The Court found that the assault on a third party was not foreseeable as a matter of law. *Id.* at 911. Moreover, the assault, being beyond the control of the county officials, constituted a intervening or superceding cause. *Id.* In *Comm'r. Corr. Cabinet v. Vester*, 956 S.W.2d 204 (Ky. 1997), the Court considered an escape of eight inmates from Kentucky State Penitentiary who

---

[4] Similarly, Judge Boggs does not cite circumstances such as ours among those which could result in foreseeable harm. *See id.* at 694-95. He cites circumstances of special relationships such as where the tort defendant had previously developed a "special relationship" with the victim of the third party intentional criminal act. This can occur for instance when a governmental entity has a special duty to protect persons or has undertaken a special responsibility to protect persons. Another example of such a special duty is where the state becomes aware of a third party's intention to engage in criminal conduct against a specific person. Finally, a special duty could arise where affirmative actions "create a high degree of risk of [the third party's] intentional misconduct." Restatement (Second) of Torts § 302B, cmt. e.H. This could occur, for instance, when a defendant gives another access to ultra hazardous materials or instruments. *See Spivey v. Sheeler*, 514 S.W.2d 667 (Ky. 1974).

brutally murdered two persons within days of their escape. The Court held that even though the Cabinet had a general duty to prevent inmates from escaping, it did not owe a legal duty to third parties to protect them from harm caused by the escapees. *Id.* at 206. It deemed this kind of harm unforeseeable.

  To be sure there are some factual differences between these cases and ours. And, each case contains some language potentially favorable to Plaintiff's view. The Court has considered these issues carefully. First, CCA has interposed neither any defense of immunity nor any other defense dependent upon a public status. Consequently, the concepts which the Court now considers are those arising directly under the state's common law of torts and apply equally both public or private actors. Though the actors in *Fryman* and *Vester* were public employees, the standard for determining foreseeability does not differ with private entities. Second, each of those cases concerns a longer time frame prior to the harm; in *Fryman*, the assault occurred about a month after the negligent release; in *Vester* the murders occurred several days after the escape. However, the temporal coincidence of the violent acts here do not make them any more foreseeable as a legal matter. Because foreseeability is not determined in hindsight, whether the violent act occurred in seven hours or one month is irrelevant. Thus, these cases stand squarely for the sound proposition that intentional violent acts against unknown third persons are generally not foreseeable.

  Within the past year, the Kentucky Supreme Court decided *Pile v. City of Bradenburg*, 215 S.W.3d 36 (Ky. 2007), which requires comment because Plaintiff says that it supports her view. There, the court held that a police officer could be liable in negligence where he left keys in his police cruiser allowing the prisoner to take control of the vehicle, crash it into a third

person and kill her. The court found that the police officer violated certain statutory ministerial duties by leaving his vehicle unattended with the keys in the ignition. The court held that the officer was not entitled to immunity for these ministerial acts, as compared to discretionary acts.[5] Second, the court suggested that the ministerial versus discretionary acts distinction accounted for a different result than in *Fryman* on the issue of proximate cause.

*Pile* is an interesting case and its facts unusual. However, *Pile* does not make a coherent analysis that signals a new direction for Kentucky courts. In a sense, *Pile* is a case that stands alone. It does not set forth a principled analysis to help guide this Court's view. It does not in any way suggest that Kentucky courts would adopt the Restatement (Second) of Torts § 319, which is this Court's principal concern. Nor does it make a persuasive and principled case that this Court should attempt to apply the ministerial versus discretionary acts distinction to the proximate cause or foreseeability analysis.

In the end, this Court must choose whether *Fryman* and *Vester* represent the most consistent direction of Kentucky policy or whether *Carneyhan* heralds a new duty and liability under Kentucky law. Deciding the scope of a duty of care is "essentially a policy determination." *Mullins*, 839 S.W.2d at 248 (Ky. 1992); *Sheehan v. United Services Auto Ass'n.*, 913 S.W.2d 4, 6 (Ky. Ct. App. 1996). To do so requires considering the policy consequences of imposing liability on certain classes of situations. *James*, 300 F.3d at 692. *Carneyhan*'s opinion provides scant support for adopting § 319. It cites a few cases in other jurisdictions, but no Kentucky cases. Moreover, in a footnote, it cites *Vester* and *Fryman* for the view that "public officials have a duty to protect a victim from harm posed by a third party only where a special

---

[5] Our case involves neither questions of immunity nor a so-called ministerial act.

relationship exists between the public officials and the victim." *Carneyhan*, 169 S.W.3d at 849, n.3. Justice Cooper does discuss the important policy implications of adopting § 319 of Restatement of Torts as Kentucky law. The Court had an opportunity to repudiate or even distinguish *Fryman* and *Vester*, but declined to do so. Indeed, it reinforced their prior holdings. This Court finds it unlikely that Kentucky courts will adopt the view that prison officials, be they public or private, owe a special duty to an unidentifiable third person who unfortunately crosses paths with a violent escapee.

      Occasionally, Kentucky courts find a way to enforce a duty to protect persons from the particular random or violent acts of another, such as in *Pile*. But Kentucky courts have not adopted Section 319 or even seriously discussed doing so. Indeed, to do so would either create an unreasonable broad scope of foreseeability or reduce courts to senseless distinctions. For instance, if the foreseeability is expanded, virtually no barrier exists to the legal exposure of prison officials. Or, courts would be reduced to finding prisons responsible for the acts of certain inmates (those with a violent past), but not those of others. Kentucky courts would more likely be persuaded by Judge Boggs' suggestion that to find that intentional violent acts upon unknown third persons are the responsibility of others, confuses our sense of responsibility as well as that of right and wrong. Thus, to broaden the scope of the foreseeability element seems unworkable, inconsistent and confusing.

      All things considered, this Court believes that actual results in *Fryman* and *Vester* are best predictors of how Kentucky courts would rule on the extension liability for these kinds of harm. The Court concludes that Plaintiff's claim fails because the harm claimed was unforeseeable and because Edmonds' acts constitute an intervening and superceding cause.

The Court will enter an order consistent with this Memorandum Opinion.

cc:     Counsel of Record